UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| HARLAN B. COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-143-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Harlan B. Cooper ("Cooper" or "the Claimant") and Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"). [Record Nos. 11, 12] Cooper argues that the Administrative Law Judge ("ALJ") erred in concluding that he is not entitled to a period of disability and disability insurance benefits. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Cooper.

**I.**

On May 7, 2012, Cooper filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). [Administrative Transcript, "Tr.," p. 167] He alleged a disability beginning September 16, 2011. [Tr., pp. 20, 43] Cooper, along with attorney Paul F. Guthrie and vocational expert ("VE") Betty

- 1 -

Hale, appeared before ALJ Christopher R. Daniels on December 16, 2013, for an administrative hearing.  [*Id.*, pp. 34−68]  On February 10, 2014, ALJ Daniels found that Cooper was not disabled under sections 216(i) and 223(d) of the Act.  [*Id.*, p. 30]  Cooper appealed the ALJ's determination to the Social Security Administration's Appeals Council. However, the council declined the Claimant's request for review.  [*Id.*, p. 1]

Cooper was 37 years-old when his alleged disability began, and 39 years-old at the time of the ALJ's decision.  [Tr., pp. 42, 190]  He has a tenth grade education and previously worked as a warehouseman, forklift operator, truck driver, and warehouse supervisor.  [*Id.*, pp. 63, 172−79, 190]  After considering the testimony presented during the administrative hearing and reviewing the record, the ALJ concluded that Cooper suffers from three severe impairments: (i) degenerative joint disease ("DJD") of the left shoulder; (ii) degenerative disc disease; and (iii) epilepsy.  [*Id.*, p. 22]  Notwithstanding these impairments, the ALJ determined that the Cooper maintained the residual functional capacity ("RFC") to perform light work, with the following constraints:

> standing or walking six hours in an eight-hour workday and sitting six hours in an eight-hour workday, except the claimant is able to lift or carry no more than ten pounds occasionally and less than ten pounds frequently, and has the following additional limitations: no more than frequent balancing and kneeling; no more than occasional stooping, crouching, crawling, pushing or pulling with the left upper and lower extremities, or climbing ramps or stairs. The claimant can tolerate occasional exposure to extreme cold and vibration. The claimant is limited to occasional reaching overhead with the left upper extremity, but has no other limits in reaching, handling, fingering or feeling. The claimant is unable to climb ladders, ropes, or scaffolds and is unable to be exposed to hazards.

[Tr., p. 25]

After considering Cooper's age, education, work experience, and RFC, ALJ Daniels concluded that the Claimant could perform a significant number of jobs in the national economy, including:  ticket taker, surveillance systems monitor, and nonhazardous security guard.  [*Id.*, pp. 29, 65−66]  As a result, the ALJ determined that Cooper was not disabled from September 16, 2011, through the date of the administrative hearing.  [*Id.*, p. 29]

## II.

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity,' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)).  A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. § 404.1520(b).  Second, the claimant must show that he suffers from a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(c).  Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience.  20 C.F.R. § 404.1520(d).  Fourth, if the

Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled.  20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work.  If he cannot perform other work, the Commissioner will find the claimant disabled.  20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "'the fifth step, proving that there is work available in the economy that the claimant can perform.'"  *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court.  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).  Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). In other words, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III.

### A.   Severe Mental Impairment

Cooper first argues that the ALJ erred by failing to classify his alleged depression and anxiety as severe impairments. [Record No. 11-1, pp. 8–9] Specifically, Cooper notes that Dr. Phillis Corbitt rendered an opinion that Cooper was disabled due to physical and mental limitations. [Tr., p. 332–33] He also highlights consultative examiner ("CE") Jennifer Fishkoff's opinion in August 2012 that Cooper "does not appear to be capable of tolerating the stress and pressures associated with full time work activity." [*Id.*, p. 327]

It is the claimant's burden to prove the severity of his impairments at the second step of the sequential evaluation process. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities," which are the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(a), (b). The Sixth Circuit has held that "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)

(quoting *Higgs, v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience."  *Higgs*, 880 F.2d at 862.  Additionally, the mere diagnosis of a condition does not thereby establish its severity.  *Id.* at 863.

Once step two is cleared by determining that some severe impairments exist, the ALJ must then consider a claimant's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Anthony*, 266 F. App'x at 457; S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  "The fact that some of [a claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant."  *Anthony*, 266 F. App'x at 457.

At step two, the ALJ determined that Cooper suffered from severe impairments, including DJD of the left shoulder, degenerative disc disease, and epilepsy.  [Tr., p. 22] Consequently, the fact that his depression and anxiety were not deemed to constitute severe impairments is "legally irrelevant."  *Anthony*, 266 F. App'x at 457.  Additionally, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence" in determining the Claimant's RFC.  [*Id.*, p. 25]  In short, the ALJ's failure to find that the alleged depression and anxiety qualified as severe impairments is not reversible error.  *Riepen v. Comm'r of Soc. Sec.*, 198 F. App'x 414, 415 (6th Cir. 2006); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Talos v. Comm'r of Soc. Sec.*, No. 11-CV-13207, 2012 WL 1392156, at *8 (E.D. Mich. Mar. 26, 2012).

###### B.      RFC

Cooper also argues that the ALJ erred in determining his RFC.  First, he asserts that the ALJ failed to properly consider treating and non-treating source opinions concerning his mental health.  [Record No. 11-1, pp. 2–3]   Second, he claims that the ALJ erred in evaluating the opinions of these sources with respect to his physical health.  [*Id.*, pp. 9–11] Cooper also contends that the ALJ improperly assessed his credibility.  [*Id.*, p. 11]  However, after a review of the record, the Court does not find any of Cooper's arguments to be persuasive.  The ALJ applied the proper legal standard, and his findings are supported by substantial evidence.  Therefore, the Court will affirm the ALJ's decision.

RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  The RFC determination is a matter reserved for the ALJ.  *See* 20 C.F.R. § 404.1527(d)(2).  In making this determination, the ALJ considers the medical evidence, non-medical evidence, and the claimant's credibility.  *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).  An ALJ's RFC finding will be upheld where it is supported by substantial evidence.

###### 1.      Mental Health

The ALJ thoroughly analyzed Cooper's mental health records.  After conducting this analysis, he accorded "little weight" to treating physician Dr. Corbitt's opinion because her conclusions were not supported by objective findings in her treatment records.  [Tr., p. 23] Second, he accorded "[s]ignificant weight" to examining psychologist Fishkoff's second

opinion. [*Id.*]  Lastly, he accorded "great weight" to the opinions of State agency reviewing psychologists. [*Id.*]  Cooper asserts that the ALJ improperly evaluated these opinions.[1]

### a.        Treating Source's Opinion

Generally, the ALJ must give the treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the claimant's record.  20 C.F.R. § 404.1527(c)(2).   However, an "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'"  *Kornecky v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2006) (per curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)).

In determining the appropriate weight to give a treating physician's medical opinion, the ALJ looks to: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the supportability of the opinion; (iv) the consistency of the opinion with regard to the record as a whole; (v) whether the treating source is a specialist in the area of his or her opinion; and (vi) any other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2)–(6).

Here, the ALJ provided a valid reason for discounting Dr. Corbitt's opinion, noting that her opinion lacked a basis in objective findings.  *Kornecky*, 572 F.3d at 286; *Payne v.*

---

[1]        Cooper also alleges that the ALJ failed to mention Lexington Clinic treatment records from April 11 to September 5, 2013. [Record No. 11-1, p. 2] Contrary to this assertion, the ALJ referred to these records throughout his decision.  For instance, the ALJ detailed Cooper's substance abuse, the fall that resulted in hemiarthroplasty, the July 2013 left shoulder X-ray, and the reports of Dr. Marlowe and Dr. Wilkes. [Tr., p. 27, *referring to* pp. 368, 373, 381, 383]  He also discussed the panic attacks that Cooper reported to Dr. Marlowe.  [*Id.*, p. 23, *referring to* p. 381]  Thus, this allegation is unfounded.

*Comm'r of Soc. Sec.*, 402 F. App'x 109, 112–13 (6th Cir. 2010). [Tr., p. 23] Further, Dr. Corbitt's records suggested that Cooper's anxiety and depression resulted from "prescribed medication" and "withdrawal" from that medication, indicating that the conditions were temporary in nature. [*Id.*, pp. 23, 301] The ALJ properly discounted Dr. Corbitt's opinion based on the fact that Cooper appears to have abused prescription medications while under Dr. Corbitt's care. *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349, 351 (6th Cir. 2013) (per curiam) (ALJ did not err in relying on prescription medication abuse for discounting treating physician's opinion).

Cooper points to *LaRiccia v. Commissioner of Social Security* to support his argument that the ALJ failed to properly evaluate Dr. Corbitt's opinion. 549 F. App'x 377 (6th Cir. 2013). [Record No. 11-1, pp. 5–8] However, in *LaRiccia*, the ALJ did not state the weight assigned to the treating source opinions. *Id.* at 386. Further, the ALJ in that case did not provide good reasons for discounting the opinions of treating physicians. *Id.* Unlike the ALJ in *LaRiccia*, ALJ Daniels addressed Dr. Corbitt's opinion, providing valid reasons for discounting it. As a result, the ALJ did not err in according little weight to Dr. Corbitt's opinion.

### b. Non-treating Psychologists' Opinions

The weight the ALJ gives to a consultative or State agency reviewing medical opinion depends on a variety of factors, including whether the source actually treated the claimant, the supportability of the source's opinion, consistency of the opinion compared with the record as a whole, and other factors. 20 C.F.R. § 404.1527(c). Further, under S.S.R. 96-6p, opinions of non-treating physicians and psychologists may be entitled to

greater weight than the opinions of treating sources.  1996 WL 374180, at *3 (July 2, 1996).

There is "no categorical requirement that the non-treating source's opinion be based on a

'complete' or 'more detailed and comprehensive' case record."  *Helm v. Comm'r of Soc. Sec.

Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011).

 In the present case, the ALJ did not explicitly state his reason for according

"significant weight" to Fishkoff's January 2013 opinion; however, the ALJ referenced both

Fishkoff's August 2012 and January 2013 opinions.  [Tr., p. 23, *referring to* pp. 327, 346]

In the August 2012 opinion, Fishkoff found that Cooper's work abilities were

"compromised," but in January 2013, she found that Cooper was "capable of tolerating the

stress and pressures associated with day-to-day work activity."  [*Compare* Tr., p. 327 *with* p.

346]  Because Fishkoff's August 2012 opinion was based partly on the Claimant's subjective

complaints, it was entitled to less weight.  *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431,

433 (6th Cir. 2012).   Further, the ALJ properly considered the internal consistency of

Fishkoff's opinions.   20 C.F.R. § 404.1527(c)(3).   Moreover, immediately following his

discussion of Fishkoff's opinion, the ALJ focused on the opinions of the State agency

reviewing psychologists, which supported Fishkoff's January 2013 findings.  [*Id.*, p. 23]

Thus, the ALJ properly considered the consultative examiner's opinion as it related to the

record as a whole.  *Id.*

 Cooper also argues that Fishkoff's opinion was flawed because it did not include a

review of all his records.  [Record No. 11-1, pp. 8–9]  However, the regulations do not

require consultative psychologists to review a claimant's entire record.  *See* 20 C.F.R. §

404.1517; *Helm*, 405 F. App'x at 1002.

Next, Cooper takes issue with the fact that the ALJ gave "great weight" to the opinions of State agency reviewing psychologists Richard Gross and Ann Hess. [Record No. 11-1, p. 11]  For example, Hess concluded that Cooper had normal recall, short-term memory, and concentration.  [*Id.*, p. 92]  She also found that he had average abstract reasoning and judgment. [*Id.*]  Further, Gross concluded that Cooper was "not limited from a psychological point of view," based on the fact that Cooper was able to take care of his children and manage his life.  [*Id.*, p. 75]

The ALJ afforded more weight to these psychologists' opinions because they were consistent with the "evidence as a whole," which highlighted the temporary nature of Cooper's impairments.  [*Tr.*, p. 23]  For instance, consultative examiner Owen made record of Cooper's withdrawal from Xanax, an anti-anxiety medication.  [*Id.*, pp. 351]  Moreover, as noted by the ALJ, Cooper testified that taking Trazodone helped alleviate his depression and anxiety.  [*Id.*, p. 59]  Because the ALJ followed 20 C.F.R. § 404.1527(c) in evaluating the non-treating source opinions, he did not err in determining that Cooper's anxiety and depression are consistent with the RFC finding.

### 2. Physical Health

Cooper also asserts that the ALJ failed to properly evaluate his physical limitations in determining his RFC.  In particular, Cooper claims that the ALJ erred by improperly weighing the opinions of: (i) treating physician Dr. Corbitt; (ii) treating physician Dr. Tibbs; (iii) consultative examiner Dr. Owen; and (iv) State agency reviewing physician Dr. Lange. [Record No. 11-1, pp. 9–12]  He also argues that the ALJ erred in evaluating his subjective complaints.  [*Id.*, p. 11]

### a.      Dr. Tibbs

Cooper contends that the ALJ improperly discounted treating physician Dr. Phillip Tibbs' opinion that Cooper is "disabled for a combination of lumbar degenerative disc disease and left shoulder replacement." [Record No. 11-1, p. 3, *referring to* Tr., p. 309]  As noted by the Commissioner and the ALJ, a determination that the Claimant is "disabled" is not a medical opinion; rather, it is an administrative finding reserved for the ALJ.  20 C.F.R. § 404.1527(d).  [Tr., p. 28]  Thus, the ALJ properly rejected this opinion.  *Bass v. McMahon*, 499 F.3d 506, 511–12 (6th Cir. 2007).

Further, Dr. Tibbs' opinion was not supported by his findings.  For instance, Dr. Tibbs found that Cooper's cranial nerves were intact, he had manual muscle testing of 5/5, and he performed a negative straight leg raise.  [*Id.*, p. 309]    Consequently, Dr. Tibbs' opinion was not entitled to controlling weight.  20 C.F.R. § 404.1527(c)(2).

### b.      Dr. Corbitt

The Claimant also argues that the ALJ erred in giving "[l]ittle weight" to treating physician Dr. Corbitt's opinions regarding Cooper's physical limitations.  [Record No. 11-1, p. 4, *referring to* Tr., p. 28]  Specifically, Dr. Corbitt advised that Cooper could lift no more than four pounds occasionally and sit only two to three hours in an eight-hour day.  [Tr., p. 332–33]  The ALJ accorded less weight to this opinion because it was "based primarily on the [C]laimant's report."  [*Id.*, p. 28]  For example, the ALJ noted that in response to one of the assessment's questions, Dr. Corbitt wrote, "Claims he can't."  [*Id.*, *referring to* p. 333]  The ALJ also noted the limited nature of Dr. Corbitt's treatment notes and the fact that she failed to provide findings that supported her conclusions.  [*Id.*, p. 28, *referring to* pp.

331–35]  Moreover, he recorded that Dr. Corbitt's opinion was not consistent with the record as a whole.  [*Id.*, p. 28]

The ALJ's stated reasons for discounting Dr. Corbitt's opinion are valid.  First, the ALJ was not required to give controlling weight to an opinion based on the Claimant's subjective complaints.  *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012).  Second, he was permitted to discredit the opinion because it was not supported by the physician's own objective findings.  20 C.F.R. § 404.1527(c)(3).  [Tr., p. 309]  Finally, Dr. Corbitt's opinion was further discredited by other medical opinions and Cooper's own report.  For example, a State agency reviewing physician found that Cooper could perform light work.  [*Id.*, p. 94]  And two months after Dr. Corbitt formed her opinion, the Claimant reported that he continued to engage in hobbies, such as playing basketball and hunting.  [*Id.*, p. 344]

In commenting on the ALJ's assessment of Dr. Corbitt, Cooper appears to argue that the ALJ placed too little emphasis on records of a seizure occurring in May 2013.  [Record No. 11-1, p. 3]  However, the ALJ discussed these records in detail.  For instance, the ALJ noted that Cooper lost consciousness during the seizure, but that he had no focal motor activity or incontinence.  [Tr., pp. 27, 374]  Further, ALJ Daniels reasoned that the seizures had little effect on the Claimant's ability to work because of their infrequency and ability to be controlled by medication.  [*Id.*, pp. 27, 364]  Even though this seizure resulted in increased pain in Cooper's left shoulder, the ALJ properly noted that Cooper informed Dr. Marlowe in September 2013 that he was doing "pretty well" with the pain in his shoulder.  [*Id.*, pp. 27, 381]  Thus, the ALJ adequately assessed the seizure records.  *Dawson v.*

*Comm'r of Soc. Sec.*, 468 F. App'x 510, 513 (6th Cir. 2012) (ALJ did not err in according less weight to the opinions of treating physicians because the overall record indicated that the claimant's seizures were infrequent).

Because the ALJ provided several good reasons for discounting Dr. Corbitt's opinion, he did not err. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

### c.      Consultative Examiner Owen

Next, Cooper alleges that the ALJ improperly accorded "[g]reat weight" to consultative examiner Dr. James C. Owen's opinion. [Record No. 11-1, p. 10, *referring to* Tr., p. 28]  Dr. Owen concluded that the Claimant "would have moderate-to-severe difficulty lifting, handling, and carrying objects." [Tr., p. 351]  The ALJ's stated reason for giving more weight to Dr. Owen's opinion was that it was "consistent with the record as a whole." [*Id.*, p. 28]  The ALJ also noted that Dr. Owen's own medical findings supported his conclusion. [*Id.*, p. 27]

The ALJ properly evaluated Dr. Owen's opinion by comparing it with the objective medical evidence. 20 C.F.R. § 404.1527(c)(4).  For example, immediately before discussing Dr. Owen's opinion, the ALJ noted that the Claimant had normal muscle testing and negative straight leg raising in May 2012. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (before giving more weight to a non-examining source opinion, ALJ should consider other medical findings). [*Id.*, p. 27, *referring to* p. 309]  In addition, Dr. Owen found that Cooper had normal strength, sensation, and coordination, except for Cooper's heel walk on the left side, which was a 4/5. [*Id.*, *referring to* p. 351]  Regarding Cooper's shoulder, the ALJ recorded that X-rays in July 2013 failed to reveal any dislocation or

fracture.  [*Id.*, *referring to* p. 373]  Moreover, Cooper reported in September 2013 that he was "doing pretty well with the pain of his shoulder."  [*Id.*, *referring to* p. 381]  Because Dr. Owen's conclusion was internally consistent and supported by the record as a whole, the ALJ did not err in according it great weight.  20 C.F.R. § 404.1527(c)(3)−(4).

### d.   State Agency Reviewing Physician Dr. Lange

Cooper also contends that the ALJ improperly accorded "[s]ignificant weight" to the opinion of State agency reviewing physician Amanda Lange.  [Record No. 11-1, p. 10]  The ALJ only assessed Dr. Lange's opinion after thoroughly reviewing the objective medical evidence and the opinions of the treating physicians and consultative examiner.  [Tr., p. 28]  As a result, he only utilized Dr. Lange's opinion to *support* his RFC finding.  *See* 20 C.F.R. § 404.1527(c)(3).

As the Commissioner notes, Dr. Lange's opinion was consistent with the findings of Dr. Owen, Dr. Harned, and Dr. Grider.  [Record No. 12, p. 13]  For instance, Dr. Grider determined that Cooper had intact strength in his bilateral lower extremities, though Grider noted knee and Achilles issues.  [Tr., p. 273]  In fact, at his appointment with Dr. Grider, Cooper stated that his back and lower leg pain had improved.  Further, Dr. Harned noted that Cooper's cranial nerves were intact, he had a normal gait, and his lumbar spine had full extension.  [*Id.*, p. 366]  While Dr. Owen found that Cooper had significant limitations, he did not conclude that they were disabling.  [*Id.*, p. 351]

Dr. Lange's RFC opinion took into account Cooper's exertional and postural limitations.  For instance, Dr. Lange advised that the Claimant could only walk or sit for six hours in an eight-hour workday.  [*Id.*, p. 94]  In addition, he imposed limitations on Cooper's

ability to climb, stoop, kneel, push, and pull.  [*Id.*]  The ALJ limited Cooper even further than Dr. Lange, which demonstrates that he compared Dr. Lange's opinion with the record as a whole.  20 C.F.R. § 404.1527(c)(4).  [*Id.*, p. 28]

### e.      Subjective Complaints

Cooper seems to argue that the ALJ unreasonably evaluated his credibility.  [Record No. 11-1, p. 11]  When an ALJ makes a determination regarding a claimant's credibility, he is entitled to great deference because he is able to "observe the claimant and judge [his] subjective complaints."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  However, an ALJ who rejects a claimant's testimony must clearly state his reasons.  *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

The Sixth Circuit applies a two-prong test for evaluating subjective allegations.  First, the court examines whether objective medical evidence confirms the severity of the alleged pain arising from the condition. *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 990 (6th Cir. 2009).  Second, it examines whether the medical condition can reasonably be expected to produce the alleged disabling pain.  *Id.*

The ALJ followed this test, finding that (1) Cooper was credible regarding the nature of his impairments, and (2) his impairments could reasonably be expected to cause the alleged symptoms.  [Tr., p. 26]  However, he did not find Cooper's statements concerning the "intensity, persistence and limiting effects" to be credible.  [*Id.*]  The ALJ noted that Cooper discontinued physical therapy, even though the first three sessions showed improvement and his prognosis was considered "excellent."  *See Dewberry v. Sec'y of Health & Human Servs.*, 811 F.2d 604, 1986 WL 16087, *2 (6th Cir. 1986) (finding claimant's testimony not to be

credible where he did not regularly follow through with physical therapy treatments). [*Id.*, *referring to* pp. 271–72] Second, the ALJ reasoned that some of the objective medical evidence contradicted Cooper's allegations. 20 C.F.R. § 1529(c)(4); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007). [*Id.*, p. 27, *referring to* pp. 311, 366]

Additionally, the ALJ described Cooper's apparent abuse of prescribed narcotic medications, which suggests that Cooper had ulterior motives for complaining to physicians about his pain. [*Id.*, p. 27, *referring to* p. 369] Finally, the ALJ reasoned that Cooper's own statements regarding his daily activities contradicted his allegations of disabling pain. [*Id.*, p. 27] For example, the Claimant testified that he could walk 700 yards, stand for an hour, and perform light chores around the house. [*Id.*, pp. 52, 57] He also testified that he looked for other employment opportunities. [*Id.*, p. 10] Because the ALJ is entitled to deference in his credibility determinations, and because he explained the discrepancies between Cooper's subjective complaints and the record as a whole, he did not err in according little weight to Cooper's statements. *Cruse*, 502 F.3d at 543.

### IV.

ALJ Daniels did not err in his assessment of the Claimant's physical and mental impairments and his corresponding RFC determination was supported by substantial evidence. He properly evaluated the opinions of Cooper's treating and non-treating sources, as well as Cooper's own credibility. Further, substantial evidence supports the Commissioner's determination. Accordingly, it is hereby

**ORDERED** as follows:

1.       Plaintiff Harlan B. Cooper's Motion for Summary Judgment [Record No. 11]

is **DENIED**.

2.       Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No.

12] is **GRANTED**.

3.       The decision of Administrative Law Judge Christopher R. Daniels will be

**AFFIRMED** by separate Judgment entered this date.

This 14th day of December, 2015.

Signed By:

*Danny C. Reeves*   DCR

United States District Judge